IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

TUAD DAMONN WASHINGTON, §
TDCJ #2030027, §
　　　　　　　　　　　　　　§
　　　　　　Petitioner, §
　　　　　　　　　　　　　　§
v. §
　　　　　　　　　　　　　　§ CIVIL ACTION NO. H-17-1650
LORIE DAVIS, Director, §
Texas Department of Criminal §
Justice - Correctional §
Institutions Division, §
　　　　　　　　　　　　　　§
　　　　　　Respondent. §

## MEMORANDUM OPINION AND ORDER

Tuad Damonn Washington has filed a Petition for a Writ of Habeas Corpus By a Person in State Custody ("Petition") (Docket Entry No. 1), seeking relief under 28 U.S.C. § 2254 from an aggravated assault conviction in Montgomery County, Texas. The respondent has filed Respondent Davis's Motion for Summary Judgment with Brief in Support ("Respondent's MSJ") (Docket Entry No. 15), along with a copy of the state court records (Docket Entry No. 16). Washington has filed "Petitioner['s] Response to Respondent['s] Motion for Summary Judgment" ("Petitioner's Response") (Docket Entry No. 17). After considering the pleadings, the state court record, and the applicable law, the court will grant Respondent's MSJ and will dismiss this action for the reasons explained below.

## I. Background

A Montgomery County grand jury returned an indictment against Washington in cause number 13-01-00068-CR, charging him with aggravated assault with a deadly weapon on a Montgomery County Sheriff's Deputy who was acting in his official capacity as a public servant (count one) and aggravated assault on a security officer (count two) at the Woodland's Mall, where the incident occurred.[1] The indictment was enhanced for purposes of punishment with allegations that Washington had at least four prior felony convictions for burglary of a habitation, possession of a firearm as a felon (twice), and aggravated robbery.[2] On December 4, 2014, a jury in the 9th District Court of Montgomery County found Washington guilty as charged in count one, but not guilty as charged in count two.[3] After a separate punishment proceeding, the trial court sentenced Washington to life imprisonment.[4]

Washington raised eight issues on direct appeal, challenging the sufficiency of the evidence, several rulings made by the trial

---

[1] Indictment, Docket Entry No. 16-2, p. 26; Court Reporter's Record, vol. 3, Docket Entry No. 16-8, pp. 31, 36-45, 83-84. For purposes of identification, page numbers refer to the pagination assigned to the docket entry by the court's electronic filing system, CM/ECF.

[2] Indictment, Docket Entry No. 16-2, pp. 26-27; Notice of Enhancement, Docket Entry No. 16-4, p. 5.

[3] Court Reporter's Record, vol. 5, Docket Entry No. 16-10, pp. 5-6.

[4] Judgment of Conviction by Jury, Docket Entry No. 16-5, p. 17.

court, and the prosecution's use of a peremptory strike to remove the only black female (Juror #58) who was left on the panel after all of the challenges for cause had been made.[5] An intermediate court of appeals affirmed the conviction and sentence in an unpublished opinion, which summarized all of the evidence presented at trial. See Washington v. State, No. 09-15-00462-CR, 2017 WL 640823 (Tex. App. — Beaumont, Feb. 15, 2017). In a pro se petition for discretionary review Washington argued that the trial court erred by overruling his defense counsel's objection to the peremptory strike used to remove Juror #58, and that the intermediate court of appeals likewise erred by upholding that decision in violation of Batson v. Kentucky, 106 S. Ct. 1712 (1986).[6] The Texas Court of Criminal Appeals summarily refused Washington's petition for discretionary review on May 3, 2017.[7]

Washington now seeks a federal writ of habeas corpus under 28 U.S.C. § 2254 to challenge his conviction for aggravated assault on a public servant. Washington raises the same claim that was rejected by the intermediate appellate court and the Texas Court of Criminal Appeals on discretionary review, arguing that the trial court violated Batson by overruling his counsel's objection to the

---

[5]Appellant's Brief, Docket Entry No. 16-26, pp. 9, 10.

[6]Petition for Discretionary Review, Docket Entry No. 16-32, p. 6.

[7]Electronic Record, Washington v. State, PD-0308-17 (Tex. Crim. App. May 13, 2017) (per curiam) (indicating that discretionary review was refused).

-3-

peremptory strike that was used to remove Juror #58 from the panel during voir dire.[8] The respondent moves for summary judgment, arguing that Washington is not entitled to relief because his claim is without merit under the governing federal habeas corpus standard of review.

II. **Standard of Review**

Because Washington's claim was adjudicated on the merits in state court, his Petition is subject to review under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2254(d). Under the AEDPA a federal habeas corpus court may not grant relief unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1). Likewise, a court may not grant relief on a claim that presents a question of fact unless the petitioner shows that the state court's denial of relief "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

For purposes of review under § 2254(d)(1), "'[a] state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior

---

[8]Petition, Docket Entry No. 1, p. 6.

decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts.'" Matamoros v. Stephens, 783 F.3d 212, 215 (5th Cir. 2015) (citations omitted); see also Williams v. Taylor, 120 S. Ct. 1495, 1519-20 (2002). To constitute an "unreasonable application of" clearly established federal law, a state court's holding "must be objectively unreasonable, not merely wrong; even clear error will not suffice." Woods v. Donald, 135 S. Ct. 1372, 1376 (2015) (quoting White v. Woodall, 134 S. Ct. 1697, 1702 (2014)). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" Id. (quoting Harrington v. Richter, 131 S. Ct. 770, 786-87 (2011)).

The AEDPA "imposes a 'highly deferential standard for evaluating state-court rulings,' . . . [which] 'demands that state-court decisions be given the benefit of the doubt.'" Renico v. Lett, 130 S. Ct. 1855, 1862 (2010) (citations omitted). This standard is intentionally "difficult to meet" because it was meant to bar relitigation of claims already rejected in state proceedings and to preserve federal habeas review as "a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Richter, 131 S. Ct. at 786 (quoting Jackson v. Virginia, 99 S. Ct. 2781,

2796, n.5 (1979) (Stevens, J., concurring)); see also White, 134 S. Ct. at 1702.

A state court's factual determinations are also entitled to great deference on federal habeas corpus review. Findings of fact are "presumed to be correct" unless the petitioner rebuts those findings with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness extends not only to express factual findings, but also to the state court's implicit findings. See Garcia v. Quarterman, 454 F.3d 441, 444-45 (5th Cir. 2006) (citing Summers v. Dretke, 431 F.3d 861, 876 (5th Cir. 2005); Young v. Dretke, 356 F.3d 616, 629 (5th Cir. 2004)). A federal habeas corpus court "may not characterize these state-court factual determinations as unreasonable 'merely because [it] would have reached a different conclusion in the first instance.'" Brumfield v. Cain, 135 S. Ct. 2269, 2277 (2015) (quoting Wood v. Allen, 130 S. Ct. 841, 849 (2010)). "Instead, § 2254(d)(2) requires that [a federal court] accord the state trial court substantial deference." Id.

### III. Discussion

Washington contends that the trial court erred when it overruled his objection to the peremptory strike that the prosecutor used to remove Juror #58, who was the last black juror remaining on the panel after challenges for cause had been used.[9]

---

[9]Petition, Docket Entry No. 1, p. 6; Petitioner's Memorandum in Support of Writ of Habeas Corpus 28 U.S.C. § 2254 ("Petitioner's Memorandum"), Docket Entry No. 2, pp. 1-2.

Washington argues that he is entitled to relief because the state court's decision to uphold the trial court's ruling violates <u>Batson v. Kentucky</u>, 106 S. Ct. 1712 (1986).

In <u>Batson</u> the Supreme Court reaffirmed the principle that the state violates a black defendant's rights under the Equal Protection Clause by "put[ting] him on trial before a jury from which members of his race have been purposefully excluded." 106 S. Ct. at 1716 (citing <u>Strauder v. West Virginia</u>, 10 Otto 303, 100 U.S. 303, 25 L. Ed. 664 (1880)). <u>Batson</u> established a three-part methodology for determining whether a peremptory challenge was impermissibly based on race:

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race; second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question; and third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

<u>Foster v. Chatman</u>, 136 S. Ct. 1737, 1747 (2016) (quoting <u>Snyder v. Louisiana</u>, 128 S. Ct. 1203, 1207 (2008) (internal quotation marks and brackets omitted)); <u>see also</u> <u>Puckett v. Epps</u>, 641 F.3d 657, 663 (5th Cir. 2011) (outlining the three-step <u>Batson</u> inquiry).

The intermediate court of appeals rejected Washington's <u>Batson</u> claim after finding that the prosecutor provided a race-neutral explanation for striking Juror #58, which was supported by the record:

> . . . Washington argues that the State used its peremptory challenges to remove a potential juror from the jury pool based upon race. According to Washington, the prosecutor used a peremptory challenge to strike

-7-

venireperson number fifty-eight, who was the only remaining black female after challenges for cause. Defense counsel made a Batson challenge, which the trial court overruled.

The Equal Protection Clause forbids the State from exercising peremptory strikes based solely on a potential juror's race. Batson v. Kentucky, 476 U.S. 79, 89 (1986); Nieto v. State, 365 S.W.3d 673, 675 (Tex. Crim. App. 2012). To make a Batson claim, (1) the defendant must make a prima facie showing of racial discrimination; (2) if the defendant makes this showing, the State must then articulate a race-neutral explanation for the strike; and (3) the trial court must determine if the defendant has proved purposeful discrimination. Nieto, 365 S.W.3d at 676. Absent exceptional circumstances, we defer to the trial court's ruling. Id. We consider the entire voir dire record, but we need not limit our review to the specific arguments presented to the trial court. Id. We focus on the genuineness, not the reasonableness, of the asserted non-racial motive. Id. We may not substitute our judgment for that of the trial court in deciding that the State's explanation was a pretext. Id. We will sustain the trial court's ruling unless it is clearly erroneous. Id.

The record reflects that toward the end of the State's voir dire, the prosecutor asked, "Anybody here know anybody who is currently incarcerated?" Veniremember fifty-eight and nineteen other veniremembers responded affirmatively. The prosecutor then asked whether knowing someone who is incarcerated would "potentially sway you one way or the other to where you're either going to hold that against me or the State or hold that against the defendant[.]" None of the jurors responded affirmatively.

After the challenges for cause and peremptory challenges, defense counsel stated that she was asserting a Batson challenge because veniremember fifty-eight "was the only black female who was left after challenges for cause and the State used a peremptory strike to strike her." The prosecutor responded that he could give reasons for why he struck each person. The prosecutor explained that veniremember fifty-eight and six other veniremembers were all on two lists and were struck for the same reason. The prosecutor stated, "I didn't even know the races for the various people, but ... they were on both of those lists." The State indicated that the two lists contained people who had responded affirmatively to the State's question about knowing someone who was incarcerated or

-8-

had been formerly incarcerated and who responded in a particular manner to defense counsel's first sliding scale question. Defense counsel's first sliding scale question was whether prospective jurors agree that people's misfortunes result from the mistakes they make. The trial judge noted that veniremember fifty-eight had responded to both questions in the manner the State indicated it found objectionable, as had several other veniremembers on which the State exercised its peremptory challenges.

Washington argues on appeal that the prosecutor's question about which veniremembers knew someone who was incarcerated "is not a race neutral question as it is a well-known fact that African-American incarceration rates are much higher than other ethnic groups[]" and that the question is "designed to improperly deny African-Americans their [c]onstitutional right to serve on a jury for an ostensibly race neutral reason. In addition, Washington asserts that the prosecutor's assertion regarding the sliding scale question is incorrect because "[t]here was no third sliding scale question." As explained above, the record reflects that the State was referring to defense counsel's first "sliding scale question[,]" which she identified as such before she asked it.

The State articulated its reasons for peremptorily striking veniremember fifty-eight, and the trial court ruled on the issue of discrimination. See Young v. State, 283 S.W.3d 854, 866 (Tex. Crim. App. 2009). We now proceed to a review of whether the trial court's ruling that there was no discriminatory intent was clearly erroneous. See id. The reason for exercising a peremptory strike is race neutral, unless a discriminatory intent is inherent in the explanation given by the prosecutor. See Purkett v. Elem, 514 U.S. 765, 768 (1995). The State's explanation need not be persuasive or even plausible. Id. at 767-68. The persuasiveness of the justification is relevant to the trial court's determination of whether the opponent of the strike proved purposeful discrimination. Id. at 768.

Viewing the entire voir dire record, we conclude that the trial court's finding that the State's explanation was race-neutral is supported by the record and is not clearly erroneous. See id. The trial court did not abuse its discretion by overruling Washington's Batson challenge.

Washington, 2017 WL 640823, at *7-8. The state court's factual findings are presumed correct unless the petitioner presents "clear and convincing evidence" to the contrary. See 28 U.S.C. § 2254(e)(1); Davis v. Ayala, 135 S. Ct. 2187, 2219-20 (2015) (applying the presumption of correctness to findings made during the three-part Batson inquiry). Washington does not meet his burden to do so, and he does not otherwise show that the state court's decision contravenes Batson.

Washington disputes the state court's conclusion that the prosecutor's asserted explanation for the strike was race-neutral, noting that the prosecutor did not strike two other potential jurors (Jurors #23 and #49) who gave answers similar to Juror #58.[10] Washington refers specifically to answers given by these potential jurors to the sliding-scale question posed by defense counsel about whether they could agree that "people's misfortunes result from the mistakes they make."[11] The record shows that the prosecutor used peremptory strikes to remove seven potential jurors, including Juror #58, who did not strongly agree with this premise and also indicated that they knew someone who is currently incarcerated.[12] Juror #58 met both criteria.[13] Contrary to Washington's contention,

---

[10]Petitioner's Memorandum, Docket Entry No. 2, p. 7.

[11]Court Reporter's Record, vol. 2, Docket Entry No. 16-7, p. 102.

[12]Id. at 161-62.

[13]Id. at 90-91, 102.

Jurors #23 and #49, both of whom strongly agreed with the sliding-scale question, did not.[14] Thus, Washington does not establish that the prosecutor's strike was not made for a race-neutral reason, and he does not point to anything else that raises an inference of purposeful discrimination.[15]

Because Washington does not point to evidence in the record that indicates the peremptory strike of Juror #58 was not race-neutral, the state court's finding that there was no evidence of discriminatory intent is entitled to deference. See Hoffman v. Cain, 752 F.3d 430, 449 (5th Cir. 2014) (applying AEDPA deference to fact-findings made by a state appellate court on a Batson claim). Washington does not show that the state court's decision was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); Davis, 135 S. Ct. at 2199. Washington does not otherwise show that the state court's decision was contrary to

---

[14]Id. at 102-03.

[15]Washington points to the transcript and maintains that the trial court found that there was a "racial reason for making the strike." Petitioner's Response, Docket Entry No. 17, p. 2. Washington's argument is misleading. The record reflects that after the prosecutor articulated his explanation for striking the juror at issue, the trial court responded: "Okay. I - - I see a racial reason for making the strike. I'm going to overrule your Batson challenge." Court Reporter's Record, vol. 2, Docket Entry No. 16-7, p. 163. When read in context, it is evident that the trial court found that the strike was made for a race neutral reason and that the language highlighted by Washington is, at best, a mis-statement. Alternatively, there is a typographical error in the transcript. Either way, the isolated remark does not demonstrate that a Batson error occurred.

or an unreasonable application of Batson and, therefore, he does not establish a valid claim.

Because Washington has failed to establish a valid claim for relief, Respondent's MSJ will be granted and the Petition will be denied.

## IV. Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner. A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that 'reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" Tennard v. Dretke, 124 S. Ct. 2562, 2565 (2004) (quoting Slack v. McDaniel, 120 S. Ct. 1595, 1604 (2000)). Under the controlling standard this requires a petitioner to show "'that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'" Miller-El v. Cockrell, 123 S. Ct. 1029, 1039 (2003). Where denial of relief is based on procedural grounds the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would

find it debatable whether the district court was correct in its procedural ruling." Slack, 120 S. Ct. at 1604.

A district court may deny a certificate of appealability, sua sponte, without requiring further briefing or argument. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000). After careful review of the pleadings and the applicable law, the court concludes that reasonable jurists would not find the assessment of the constitutional claims debatable or wrong. Because the petitioner does not demonstrate that his claims could be resolved in a different manner, a certificate of appealability will not issue in this case.

## V. Conclusion and Order

The court **ORDERS** as follows:

1. Respondent Davis's Motion for Summary Judgment (Docket Entry No. 15) is **GRANTED**.

2. Tuad Damonn Washington's Petition for a Writ of Habeas Corpus By a Person in State Custody (Docket Entry No. 1) is **DENIED**, and this action will be dismissed with prejudice.

3. A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this Memorandum Opinion and Order to the parties.

**SIGNED** at Houston, Texas, on this 1st day of November, 2017.

SIM LAKE
UNITED STATES DISTRICT JUDGE